```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/23/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
NAISHEL SOPHIA,                                              :
                              Petitioner,                    :
                                                             :        19 Civ. 9599 (LGS)
              -against-                                      :
                                                             :        **OPINION AND ORDER**
                                                             :
THOMAS DECKER, et al.,                                       :
                              Respondents.                   :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Petitioner Naishel Sophia has filed a motion to enforce the February 14, 2020, Opinion and Order. Petitioner contends that at a bond hearing, which took place on March 5, 2020, the Immigration Judge failed to comply with the Court's order to meaningfully consider alternatives to detention. For the reasons below, Petitioner's motion is denied.

I.    BACKGROUND

Petitioner filed a writ of habeas corpus on October 17, 2019. The writ was granted on February 14, 2020, and Respondents were directed to provide Petitioner with a bond hearing that included specific procedural safeguards:

> Accordingly, the following conditions must be in place for Petitioner's individualized bond hearing: (1) the [Department of Homeland Security ("DHS")] must carry the burden of proof to establish by clear and convincing evidence that Petitioner poses a flight risk or a future danger to the public; (2) *the adjudicator must meaningfully consider alternatives to imprisonment such as (though not exclusively) release on recognizance, parole, or electronic monitoring*; and (3) the adjudicator must meaningfully consider Petitioner's ability to pay if a monetary bond is set.

(Emphasis added). The bond hearing occurred on March 5, 2020. The majority of the hearing focused on whether Respondents could establish by clear and convincing evidence that Petitioner poses a danger to the public such that he should not be released from custody.

Alternatives to detention were also discussed at length. The Immigration Judge initially addressed the subject in a colloquy with Respondents by stating that "I do eventually have the question of how I'm supposed to consider something that I don't have jurisdiction to consider. That's why I would ask DHS to explain about alternatives to detention when we get to that point."

The subject was next raised when Petitioner's counsel discussed a proposed release plan for Petitioner. Petitioner's counsel stated that the Immigration Judge "can order compliance with programs [like those proposed]. It can order check ins with ICE on a monthly basis." The Immigration Judge responded that in order to meaningfully consider alternatives to detention

> I will meaningfully ask DHS what alternatives to detention are available from the Department of Homeland Security. I don't have alternatives to detention. I can order it, but it is likely beyond my jurisdiction to do so. There is more case law dealing with this and so -- but having said that, if DHS has -- what alternatives to detention are available from the Department?

Respondent answered that the Immigration Judge "is not like a criminal judge that would be able to order like a treatment program or compliance with certain conditions beyond payment of a bond" and that "there's no basis for [Immigration and Customs Enforcement] to monitor [Petitioner's] compliance with any such program nor any recourse for the Government if [Petitioner] fails to comply . . . because there is no basis for re-detaining [Petitioner] for failure to do this program." The Immigration Judge stated in response that "I think I could set conditions and if he violates those conditions then he can be taken back into custody. I have authority to do that. . . . [B]ut I don't have like a District Court [Judge] . . . programs available to me like a probation department . . . all I have is . . . the Department of Homeland Security."

The Immigration Judge then remarked, "I know sometimes there is ankle monitoring and sometimes there are those things available but the practice here in New York is that that's not the

way it's done unless [Petitioner] meets with the [Marshals]." She then asked Respondents whether DHS had new ankle monitoring programs in place. Respondents stated that no new programs were in place and that they do not intend to transfer custody of Petitioner to the Bureau of Prisons or Marshals. The Immigration Judge asked as a follow up whether DHS is "doing that sort of monitoring by a check in or a reporting," and Respondent stated that no such measures were available.

Petitioner's counsel then remarked that Immigration Judges in the Ninth Circuit commonly order weekly check-ins as a condition for release. The Immigration Judge responded that though this procedure is available with the agreement of the Department in California, "I have the representative of the Department here and they're saying they're not amenable to that. So that's what's available to me." Respondents then reiterated that their Department would not "be amenable to such monitoring for a person . . . in [Petitioner's] particular circumstances." The Immigration Judge then stated that ankle monitoring and check-ins are an alternative detention, though she noted that check-ins "generally [have] more to do with flight risk than the question of dangerousness." She stated again that she is considering these options meaningfully.

The Immigration Judge orally held that Respondents had met their burden of proof to show by clear and convincing evidence that Petitioner should remain in custody during the pendency of his removal proceeding, based on the danger that Petitioner poses to the public. The Immigration Judge then stated:

> To the extent that the District Court directed that -- this Court to consider alternatives to release from custody, the Court has made that consideration. The Court finds that in the context of the civil administrative removal proceedings, those avenues that are available to me [do] under certain circumstances include ankle monitoring and other alternatives to detention. However, this case does not present those circumstances for [which] such alternatives to detention would be appropriate.

The Immigration Judge's decision was based on the danger that Petitioner poses to the public. Finally, the Immigration Judge noted that both parties have a right to appeal, which Petitioner reserved.

## II.   STANDARD

"As a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to vindicate its authority, and effectuate its decrees . . . [including] to enforce the judgment." *Dulce v. Dulce*, 233 F.3d 143, 146 (2d Cir. 2000); *accord VFS Financing, Inc. v. Elias-Savion-Fox LLC*, 73 F. Supp. 3d 329, 335 (S.D.N.Y. 2014). "[A] court's power to enforce its judgment only extends to the subject matter covered by the judgment." *Matter of the Application of Whitehaven S.F., LLC v. Spangler*, 13 Civ. 8476, 2016 WL 1271499, at *1 (S.D.N.Y. Mar. 29, 2016).

"In reviewing [Petitioner's] motion to enforce, it is important to emphasize that the Court's task is narrow: it is to determine whether Respondents complied with the Opinion and Order, not to review the hearing evidence de novo." *Medley v. Decker*, 18 Civ. 7361, 2020 WL 1033344, at *2 (S.D.N.Y. Mar. 3, 2020) (internal quotation omitted). The inquiry is therefore whether during Petitioner's bond hearing the Immigration Judge "meaningfully consider[ed] alternatives to imprisonment."

## III.   DISCUSSION

Petitioner's motion is denied because the Immigration Judge meaningfully considered alternatives to imprisonment. She noted that the February Opinion required her to meaningfully consider alternatives to detention. She acknowledged limitations in her authority to order alternatives to detention, and asked Respondents what options were available through the DHS in New York. After Respondents suggested that options were limited, she nonetheless stated that "I

4

think I could set conditions and if he violates those conditions then he can be taken back into custody.  I have authority to do that." She then further inquired whether ankle monitoring and check-ins would be possible based on availability and Petitioner's circumstances.  Finally, in her oral ruling, she stated that, "in the context of the civil administrative removal proceedings, those avenues that are available to me [do] under certain circumstances include ankle monitoring and other alternatives to detention.  However, this case does not present those circumstances for [which] such alternatives to detention would be appropriate." These questions and comments show that the Immigration Judge "meaningfully consider[ed] alternatives to imprisonment."

Both parties acknowledge that the Court lacks jurisdiction to challenge the discretionary determination of the Immigration Judge that release is not warranted.  *See Hassan v. Holder*, 11 Civ. 7157, 2014 WL 1492479, at *2 (S.D.N.Y. Apr. 15, 2014) (citing 8 U.S.C. § 1226(e) and noting that a Report & Recommendation "correctly concludes that the decision whether to require a bond is a discretionary determination that . . . is not subject to habeas or other judicial review").  Petitioner objects to the ruling on the basis that the Immigration Judge refused to acknowledge that she has jurisdiction to order conditions of release.  This is incorrect, as the Immigration Judge acknowledged that she has authority to "set conditions and if he violates those conditions then he can be taken back into custody."

Second, and relatedly, Petitioner objects that the Immigration Judge insisted that the availability of the alternatives to detention depends on what DHS is able to provide.  It is correct that the Immigration Judge acknowledged that, as a practical matter, the DHS in New York is her avenue for enforcing alternatives to detention.  But she also stated that, "in the context of the civil administrative removal proceedings, those avenues that are available to me [do] under certain circumstances include ankle monitoring and other alternatives to detention." The

5

Immigration Judge therefore meaningfully considered both practical limitations on her power to provide alternatives to detention and the scope of her legal authority.

Third, Petitioner objects that the Immigration Judge considered only alternatives for detention to mitigate the risk of flight. This is incorrect. The Immigration Judge made a determination that check-ins are a more appropriate alternative to detention when flight risk is an issue, but did not forego the possibility that alternatives to detention were available in this case.

### IV.  CONCLUSION

For the foregoing reasons, Petitioner's motion to enforce is DENIED. The Clerk of Court is respectfully directed to close Docket Number 30.

SO ORDERED.

Dated: April 23, 2020
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**